# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Shannon Hollie,                                  Case No. 22-cv-314 (KMM/LIB)

              Plaintiff,

v.

                            **ORDER**

Essentia Health Moose Lake; Benjamin
Marsh, Medical Doctor, Essentia Health;
and Jane/John Does (Unknown
Individuals);

              Defendants.

This matter is before the Court on Plaintiff Shannon Hollie's motion to strike the affirmative defenses asserted by Defendant Benjamin Marsh, M.D., in his answer to the complaint. [Mot. to Strike, ECF No. 26; Def. Marsh's Ans., ECF No. 22]. For the reasons that follow, the motion is denied.

### *Background*

Mr. Hollie is involuntarily civilly committed at the Minnesota Sex Offender Program's facility in Moose Lake, Minnesota. On February 1, 2022, Mr. Hollie filed his complaint "pursuant to 42 U.S.C. § 1983, federal disability statutes, state and federal discrimination statutes," alleging that he was discriminated against as a class of one and that he received inadequate treatment for his serious medical needs. [ECF No. 1 ¶ 1]. Mr. Hollie asserts that Defendants have refused to provide him with a penile implant needed to treat erectile dysfunction following a prostatectomy procedure. He also asserts that Defendants unlawfully altered or falsified his medical records. [*Id.* ¶ 2(a)]. Dr. Marsh

is a urologist who has allegedly refused to treat Mr. Hollie and falsified his medical records for discriminatory reasons. [*Id.* ¶ 12].

Dr. Marsh began treating Mr. Hollie following a prostatectomy procedure in October 2018. Mr. Hollie informed Dr. Marsh that he was struggling with urinary leakage, pink-tinged blood spotting, and limited ability to empty his bladder. [*Id.* ¶¶ 21, 23–25]. Dr. Marsh performed a cystoscopy procedure on Mr. Hollie in June 2021, after which, Dr. Marsh also discussed options for treating Mr. Hollie's erectile dysfunction issues. Among those options was a penile implant, which Dr. Marsh allegedly told Mr. Hollie was covered by his medical insurance. [*Id.* ¶ 26]. However, Dr. Marsh also said that he was having issues with performing the procedure because Mr. Hollie is located at MSOP due to his status as a sex offender. Dr. Marsh told Mr. Hollie that he would raise his concerns with the procedure to an ethics committee, but never followed through on that promise. [*Id.* ¶¶ 27–28]. Dr. Marsh also allegedly falsified the records concerning these interactions to make it appear that the discussions he had with Mr. Hollie regarding this issue occurred in October 2021, when in reality, they had taken place in June. [*Id.* ¶¶ 29–33].

As a result of these events, Mr. Hollie asserts that he has suffered mental and emotional distress, loss of sleep, nightmares, high blood pressure, lack of sexual function, lack of ability to maintain sexual relationships, lower quality of life, demoralization in relationships, and inability to reproduce. [*Id.* ¶ 34]. In Count I of his Complaint, Mr. Hollie combines several claims. He alleges that Defendants provided him with inadequate medical care in violation of his right to due process of law under the United States Constitution and Minnesota Constitution. He further asserts that Defendants' conduct violates Titles II and

III of the Americans with Disabilities Act, the Rehabilitation Act, the Minnesota Health Records Act, and Minn. Stat. § 541.076.[1] [*Id.* ¶¶ 36–37]. In Count II, Mr. Hollie asserts that Defendants have discriminated against him based on his status as a sex offender in violation of his right to equal protection under the Fourteenth Amendment and the same statutes listed in Count I. [*Id.* ¶¶ 38–40].

On May 9, 2022, Dr. Marsh filed an answer to Mr. Hollie's complaint, largely denying the allegations against him and denying that Mr. Hollie is entitled to any relief. [ECF No. 22]. In addition, Dr. Marsh interposed eleven "affirmative defenses." [*Id.* ¶¶ XX–XXX]. In the affirmative defenses, Dr. Marsh:

1. denies he was negligent and asserts that he acted with reasonable care (¶ XX);
2. denies he violated Mr. Hollie's due process rights (¶ XXI);
3. denies he violated Mr. Hollie's equal protection rights (¶ XXII);
4. denies that any action or inaction by Dr. Marsh was a proximate cause of injury (¶ XXIII);
5. denies that he violated any of Mr. Hollie's rights under the U.S. Constitution or the Minnesota Constitution (¶ XXIV)
6. asserts that he lacks knowledge or information sufficient to form a belief regarding Mr. Hollie's alleged injuries or damages, and therefore denies the same (¶ XXV);
7. asserts that if Mr. Hollie was harmed, any damages may have been the "result of a natural disease process, pre-existing medical condition, pre-existing medical disability, a superseding cause, an act of nature, and/or the act or failure to act by one or more persons, including Plaintiff for whom [Dr. Marsh] has no right of control and over whom [he] has no responsibility (¶ XXVI);
8. asserts that Mr. Hollie's claims against him are governed by Minn. Stat. § 145.682, and demands full compliance with that statute's requirements, including service of expert affidavits (¶ XXVII);

---

[1] Section 541.076 establishes a four-year statute of limitations for an action by a "patient or former patient against a healthcare provider alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort."

9. alleges that his own actions were carried out "in good faith and were entirely consistent with all common law, statutory, constitutional, equitable, ethical, or other applicable duties or obligations of whatever nature owed to [Mr. Hollie]" (¶ XXVIII);

10. asserts that Mr. Hollie's complaint fails to state a claim upon which relief can be granted (¶ XXIX); and

11. alleges that Mr. Hollie's "causes of action against [Dr. Marsh] [are] barred by the doctrine of qualified immunity" (¶ XXX).

On July 18, 2022, Mr. Hollie moved to strike Dr. Marsh's affirmative defenses, and that motion has now been fully briefed.[2] [ECF Nos. 26–27, 33, 35–36].

### *Legal Standard*

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking a pleading is a discretionary decision, but it is often described as a "disfavored" remedy. *E.g.*, *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007); *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

"A motion to strike should be granted 'if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action.'" *Bjornson v. Soo Line R. Co.*, Civil No. 14-4596 (JRT/SER), 2015 WL 5009349, at*3 (D. Minn. Aug. 24, 2015) (quoting *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 830 (D. Minn. 2010)). "A court may strike

---

[2] In his memorandum of law in support of the motion to strike, Mr. Hollie refers to the affirmative defenses in "the Defendants [sic] Answers." [ECF No. 27 at 1]. Though he appears to refer to Defendants in the plural, he specifically references the document at docket entry 22, which is Dr. Marsh's answer containing his affirmative defenses. [*Id.*] Mr. Hollie also refers to "paragraphs XX-XXX" which corresponds to the numbering of the affirmative defenses found in Dr. Marsh's answer. [*Id.* at 3]. Accordingly, the Court interprets Mr. Hollie's motion as seeking to strike the affirmative defenses in Dr. Marsh's answer alone.

a defense as legally insufficient if the defense asserted is foreclosed by prior controlling decisions or statutes." *Nadeau v. Experian Info. Sols, Inc.*, No. 20-cv-1841 (PJS/TNL), 2020 WL 7396588, at *5 (D. Minn. Dec. 17, 2020) (internal quotation omitted). But if a defense is sufficient, as a matter of law, or presents a factual or legal question the court should hear, the motion should be denied. *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). In the absence of controlling precedent or statutory authority, "a defense will not be stricken as legally insufficient." *Bjornson*, 2015 WL 5009349, at *3.

### *Discussion*

Mr. Hollie raises several arguments in support of his motion to strike. The Court finds those arguments unavailing and will not exercise its discretion to strike the affirmative defenses from Dr. Marsh's answer. Before addressing Mr. Hollie's specific arguments, the Court observes that its decision in this matter is motivated, in large part, by the fact that striking a defense is generally a disfavored remedy. *BJC Health Sys.*, 478 F.3d at 917. Moreover, the Court finds unpersuasive Mr. Hollie's suggestion that he will be unfairly prejudiced by inclusion of these affirmative defenses in the answer. [ECF No. 27 at 9–10].

Turning to his specific arguments, Mr. Hollie first argues that Dr. Marsh's affirmative defenses should all be stricken because Dr. Marsh fails to support them with specific factual allegations. [ECF No. 27 at 3]. There is a "split amongst district courts, both within and outside the Eighth Circuit, regarding whether the plausibility standard established in Twombly and Iqbal applies to affirmative defenses." *Acosta v. Luxury Floors, Inc.*, No. 18-cv-01489 (WMW/ECW), 2018 WL 7350478, at *2 (D. Minn. Dec. 7,

2018) (quoting *Summers Mfg. Co., Inc. v. Tri-City AG, LLC*, 300 F. Supp. 3d 1025, 1043 (S.D. Iowa 2017)). "District courts in this District have also split on this issue." *Id.* (comparing *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1051 (D. Minn. 2010), and *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 925 (D. Minn. 2010)). The Court agrees with the analysis and reasoning set forth in *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d at 1051–52, and concludes that Dr. Marsh's affirmative defenses should not be stricken based on an absence of specific factual allegations supporting each defense.

Second, Mr. Hollie asserts that the first six affirmative defenses in paragraphs XX through XXV of Dr. Marsh's answer are "confusing" and are "tantamount to a denial of any claims and liability." [ECF No. 27 at 4]. Although the Court agrees with Mr. Hollie that the denials set forth in these paragraphs of the answer are not necessarily affirmative defenses that a defendant is required to plead and prove, striking them is unnecessary. They are not "legally insufficient" in any meaningful sense because Dr. Marsh has, in fact, denied liability and denied the bulk of Mr. Hollie's factual allegations, and Mr. Hollie has pointed to no controlling statute or case that requires them to be stricken. *Bjornson*, 2015 WL 5009349, at *3. Nor are these denials so redundant, immaterial, impertinent, or scandalous that the Court should exercise its discretion to remove them from the pleading. In essence, striking this material from the answer will not make the trial less complicated or otherwise streamline the ultimate resolution of the action. *Id.*

Third, Mr. Hollie argues that failure to state a claim is not an affirmative defense, so paragraph XXIX of Dr. Marsh's answer should be stricken. [*Id.* at 6–7]. Some courts

6

have stricken the assertion of failure to state a claim as an improper affirmative defense, others have held that it may be asserted as an affirmative defense, and still others have held that it should simply be treated as a denial rather than stricken. *Leonard v. Lentz*, No. 17-CV-3037-LRR, 2017 WL 11453698, at *3 (N.D. Iowa Aug. 8, 2017) (collecting cases). Here, the Court finds it appropriate to treat the assertion that Mr. Hollie's complaint fails to state a claim as a denial and concludes that striking it is neither necessary nor appropriate under the circumstances. *See id.* (agreeing with the reasoning of courts that have treated failure to state a claim as a denial rather than striking it as an irrelevant or immaterial affirmative defense).

Fourth, Mr. Hollie argues that Dr. Marsh's qualified-immunity defense in paragraph XXX of the answer should be stricken as legally insufficient because Dr. Marsh is a private actor to whom qualified immunity does not apply. [ECF No. 27 at 7–9]. "Only a state actor can face § 1983 liability for acting under color of state law," but under some circumstances, "a private entity can qualify as a state actor." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quotation omitted). Whether a private entity qualifies as a state actor is a fact-dependent question. *Id.* "But private individuals, as state actors, are not necessarily entitled to assert the defense of qualified immunity in defending section 1983 claims." *Davis v. Buchanan Cnty.*, 11 F.4th 604, 617 (8th Cir. 2021). Deciding whether a private person, as a state actor, may be protected by qualified immunity depends on the application of "two factors: the 'general principles of tort immunities and defenses applicable at common law, and the reasons we have afforded protection from suit under § 1983.'" *Id.* (quoting *Filarsky v. Delia*, 566 U.S. 377, 384 (2012)). Here, resolving the

legal sufficiency or insufficiency of Dr. Marsh's qualified immunity defense is premature. Based on the current record, the Court cannot determine whether Dr. Marsh could possibly be a state actor such that § 1983 liability could be imposed upon him. Accordingly, the Court cannot say that the defense of qualified immunity is legally unavailable and will not strike paragraph XXX from Dr. Marsh's answer.

Finally, Mr. Hollie asserts that Dr. Marsh's affirmative defense set forth in paragraph XXVII should be stricken as legally insufficient because the requirements of Minn. Stat. § 145.682 only applies to a malpractice action, and Mr. Hollie has not brought a claim for medical malpractice against Dr. Marsh. [ECF No. 27 at 5–6]. Section 145.682 provides that a plaintiff in a medical malpractice action against a health care provider must serve an affidavit of expert review along with the summons and complaint, and within 180 days after discovery has commenced, the plaintiff must serve another expert affidavit setting forth the substance of the facts and opinions to which the expert will testify. *See* Minn. Stat. § 145.682, subds. 2(1), 2(2), 3(1), 4(a).

Mr. Hollie's complaint does not explicitly mention a medical-malpractice claim. Indeed, in his reply memorandum, Mr. Hollie has explicitly stated that he is not bringing a medical-malpractice claim. [ECF No. 35 at 5–7]. Nor does the Complaint appear to allege, by some other name, that Dr. Marsh's negligence in providing medical care caused him harm. Here, Mr. Hollie has alleged violations of his federal constitutional rights based on inadequate medical treatment, the type of claim to which courts apply the deliberate-indifference standard used in the Eighth Amendment context. *Judah v. Ovsak*, 550 F. Supp.

3d 687, 703 (D. Minn. 2021) (citing *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015), and *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021)).

Still, Dr. Marsh insists that Mr. Hollie has asserted a medical-malpractice claim against him. [ECF No. 33 at 11–12]. But Dr. Marsh cites no authority for the proposition that the expert-affidavit requirements of Minn. Stat. § 145.682 apply to the deliberate-indifference claim in Mr. Hollie's complaint. The Court's own research has revealed no case concluding that the provisions of § 145.682 must be complied with by any plaintiff alleging constitutionally inadequate medical treatment. Indeed, courts that have applied § 145.682 in similar litigation have done so in the face of state law claims alleging negligent medical treatment. *See, e.g.*, *Judah*, 550 F. Supp. 3d at 707 (applying § 145.682 to "medical-malpractice-based negligence claims" brought against healthcare providers by a civilly committed individual plaintiff). In light of Mr. Hollie's clarification that he is not pursuing a medical negligence or malpractice claim against Dr. Marsh under state law, it seems unlikely that the affirmative defense in paragraph XXVII of Dr. Marsh's answer will be of much import in this litigation. However, the Court has been presented with no controlling legal authority clearly foreclosing reliance on the expert-affidavit statute in a case such as this. Accordingly, although the Court doubts the applicability of the statute, it will not strike this defense from Dr. Marsh's answer at this time.

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED that** Plaintiff's motion to strike affirmative defenses [ECF No. 26] is **DENIED**.

Date: November 18, 2022

*s/Katherine Menendez*
Katherine Menendez
United States District Judge